Filed 7/10/26  P. v. Reed CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BERNARD KRUNGGERUND REED,<br>    Defendant and Appellant. | C101335<br><br>(Super. Ct. Nos. 10F05764,<br>10F05920) |

In 2012, a jury found defendant Bernard Krunggerund Reed guilty of murder.  The jury also found true robbery-murder special circumstances for the murder.  Defendant petitioned the trial court for resentencing under then-Penal Code section 1170.95.  (Statutory section references that follow are to the Penal Code; effective June 30, 2022, the Legislature renumbered former section 1170.95 as section 1172.6.)  (Stats. 2022, ch. 58, § 10.)  There were no substantive changes to the statute.  Although petitioner filed his petition under former section 1170.95, we cite to section 1172.6 throughout this opinion.  The trial court denied the petition, finding evidence from petitioner's trial established petitioner was ineligible for resentencing.

On appeal, defendant argued the trial court erred in conducting a factual analysis of the special circumstance finding to disqualify him for relief.  We disagreed and affirmed the trial court's order.  (*People v. Reed* (Dec. 15, 2021, C093055) [nonpub. opn.].)

1

Our Supreme Court granted review but deferred further action pending the disposition in *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*). Following its decision, our Supreme Court transferred the case back to us with directions to vacate our decision and reconsider in light of *Strong*. We reversed and remanded the case for further proceedings, concluding the trial court's denial of the petition was inconsistent with section 1172.6 and *Strong*.

On remand, the trial court held an evidentiary hearing and denied defendant's petition finding defendant committed felony murder as a major participant who acted with reckless indifference to human life. Defendant now contends that insufficient evidence supports the trial court's finding. We disagree and affirm the trial court's order denying the petition.

FACTS AND HISTORY OF THE PROCEEDINGS

Facts

On August 13, 2010, codefendant Kelvin Peterson robbed a pharmacy in North Highlands. He entered the pharmacy and handed the pharmacy clerk a note that said, "This is a robbery. Give me all of your money and Oxycontin." He threatened to shoot the employees, took money from the cash register, took Oxycontin, and left the pharmacy. During the robbery one of the pharmacy technicians was armed with a gun but chose not to use it.

Defendant and Peterson met in August 2010. Defendant testified that he was a drug dealer and that he and Peterson began communicating with each other about buying drugs.

On September 2, 2010, defendant and Peterson entered the same pharmacy in North Highlands that Peterson robbed the month prior. Peterson approached the counter and handed a note to the pharmacy clerk that read: "Want all 800 Oxycontin. We will kill you." Then he pulled up his shirt and displayed a pistol tucked into his waistband.

2

The pharmacy clerk turned around and handed the note to the pharmacist who was standing behind a shelf in the back area of the pharmacy. Peterson and defendant simultaneously moved behind the pharmacy counter. Defendant walked to the cash register, put on gloves, removed money from the opened till, and began to put the money in his pants pockets.

Meanwhile, Peterson drew his pistol and walked toward the back area. Peterson became extremely agitated and threatened the pharmacist and a pharmacy technician. Defendant briefly looked at Peterson as he threatened the employees then continued to remove money from the cash register.

Peterson pointed his gun at the pharmacy technician who responded, "Put that down." Peterson said, "Give me everything" and took the money the employees had put on the counter. The pharmacist put a partially filled bottle of oxycontin pills on the counter. Peterson looked at the bottle and pointed his gun at the pharmacist. Peterson angrily said, "No, no, more. I want more. Imma kill you bitch. I'll kill you. Go get more. Where's it at? Get more. Where they at? Get 'em all." Peterson walked toward the pharmacist pointing his gun at him. The pharmacy technician, thinking Peterson was going to shoot the pharmacist, pulled a gun and attempted to shoot at Peterson but the gun did not fire. The pharmacy technician ran, and Peterson gave chase; the two exchanged gunfire as the pharmacy technician ran out of the pharmacy. Defendant ran out of the pharmacy once the shooting started. During the shooting, Peterson shot two pharmacy employees who were caught in the crossfire, killing one and hitting the other in the foot.

When police arrested Peterson they searched his phone and found a contact labeled "Cell phone AZ" with defendant's phone number. Phone records show Peterson and defendant made over 130 connections from August 30, 2010, to September 8, 2010. During that time, nearly 100 connections occurred before the approximate time of the robbery and 35 connections after the robbery. There were also at least four different

3

phone calls or attempted phone calls between defendant and Peterson prior to the robbery.

In 2012, the People charged defendant with murder (§ 187, subd. (a)) and robbery (§ 211). The People alleged the murder was committed while defendant was engaged in the commission of a robbery and that a principal in the offense was armed with a gun. (§§ 190.2, subd. (a)(17), 12022, subd. (a)(1)).

After trial, the jury found defendant guilty on all counts. The jury also found true the alleged special circumstance and enhancement.

The trial court sentenced defendant to life in prison without the possibility of parole on the murder count, stayed the robbery count under section 654, and imposed one year on the firearm enhancement, for an aggregate sentence of life in prison without the possibility of parole plus one year.

Procedural History

Defendant appealed and this court affirmed the judgment. (*People v. Reed* (Mar. 18, 2015, C071276) [nonpub. opn.] [we take judicial notice of our opinions from defendant's prior appeals (Evid. Code, §§ 451, subd. (a), 452, subd. (d), 459, subd. (a)].)

In 2019, defendant petitioned for resentencing under section 1172.6 claiming he was eligible for resentencing because he was "not the actual killer, did not aid or abet the murder with the intent to kill, and was not a major participant in the felony or act with reckless indifference to human life." (*People v. Reed* (Dec. 15, 2021, C093055) [nonpub. opn.].) The trial court denied the petition. (*Ibid.*) Defendant appealed and this court affirmed the trial court's denial of defendant's petition. (*Ibid.*)

Defendant filed a petition for review and the Supreme Court, following its decision in *Strong, supra,* 13 Cal.5th 698, transferred the case back to this court to reconsider the matter in light of *Strong*. (*People v. Reed* (Jan. 13, 2023, C093055) [nonpub. opn.].) Having reconsidered the case, this court reversed and remanded the case

4

to the trial court with instructions to issue an order to show cause and hold an evidentiary hearing on appellant's petition. (*Ibid*.)

### 1172.6 Evidentiary Hearing

On remand, the trial court held a hearing. The People presented several videos showing the crime and submitted the trial transcript, clerk's transcript, and trial exhibits. Citing the *Banks/Clark* factors, the People argued the evidence demonstrated that defendant was a major participant in the robbery who acted with reckless indifference to human life.

The trial court found the defendant participated in the planning of the robbery citing the "numerous phone calls" between the two codefendants prior to the robbery. The court viewed the codefendants' behavior in the security video as indicating a "choreographed plan." Defendant knew Peterson was armed and likely knew Peterson used a gun in the previous robbery. The court found it foreseeable that there would be a shootout because the codefendants returned almost a month later to the same location as Peterson's previous armed robbery. The note given to the pharmacy employee also read "We will kill you," indicating defendant knew a firearm was available to use, if necessary. It was "extremely reckless disregard for human life to enter with a firearm knowing that it is loaded and that you may have to use it, which is, in fact, not only foreseeable, but came to fruition in this case."

Defendant was present and actively participated in the robbery by taking money from the cash register. Defendant and Peterson were only a few feet from each other during the robbery and the court found defendant could hear Peterson escalate the situation and threaten the pharmacy employees. Despite his close proximity, defendant did not attempt to intervene or stop Peterson from using the gun.

The trial court found defendant was aware of the grave risk to human life of Peterson bringing a firearm because the modus operandi was the same for both robberies.

5

The robbery, although over in a relatively short time, was prolonged. When the shooting started defendant fled with the money he took from the cash register and did not direct Peterson to stop. The court also found defendant could have abandoned the robbery once he saw Peterson display the gun and rejected the argument that defendant abandoned the crime after the shooting began because his portion of the crime was already completed.

The trial court denied defendant's petition finding defendant was a major participant in the robbery and acted with reckless indifference to human life in the conduct of the robbery.

Defendant appeals.

## DISCUSSION

### I

### *Statutory History*

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) amended the felony-murder rule to provide, in relevant part: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e).)

Where, as here, the trial court issues an order to show cause and holds an evidentiary hearing, the prosecution bears the burden of proving beyond a reasonable doubt that the defendant is guilty of murder under California law as amended by Senate Bill 1437. (§ 1172.6, subd. (d)(3).) The parties may rely on evidence in the record of conviction or offer new or additional evidence at the hearing. (*Ibid*.) The trial court acts

6

as an independent fact finder and determines whether the evidence establishes beyond a reasonable doubt that the defendant would be guilty of murder under the amended sections 188 and 189 and, therefore, ineligible for relief under section 1172.6. (*People v. Cody* (2023) 92 Cal.App.5th 87, 110.)

## II

### *Standard of Review*

Defendant was charged with murder based on a felony-murder theory. Defendant was not the actual killer; the evidence conclusively established that Peterson shot the victim. Thus, to affirm the trial court's order denying defendant's resentencing petition, there must be substantial evidence that defendant was a major participant in the attempted robbery and that he acted with reckless indifference to human life.

We examine " 'the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt.' " (*People v. San Nicolas* (2004) 34 Cal.4th 614, 657-658.) "We do not reweigh the evidence or revisit credibility issues, but rather presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence." (*People v. Pham* (2009) 180 Cal.App.4th 919, 924-925.) "Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal." (*People v. Zamudio* (2008) 43 Cal.4th 327, 358.)

## III

### *Major Participant and Reckless Indifference to Human Life*

The major participation and reckless indifference requirements set forth in section 190.2, subdivision (d), and incorporated into the felony-murder rule by Senate Bill 1437,

codify the holding of *Tison v. Arizona* (1987) 481 U.S. 137 (*Tison*). *Tison* and a prior decision on which it is based, *Enmund v. Florida* (1982) 458 U.S. 782, collectively place conduct on a spectrum. (*People v. Banks* (2015) 61 Cal.4th 788, 794 (*Banks*).)

At one end of the spectrum is a defendant such as Enmund, who planned and participated in the crime as the getaway driver in an armed robbery that resulted in the unplanned murder of the robbery victim and his wife. (*Banks, supra*, 61 Cal.4th at p. 799.) At the other end of the spectrum are "actual killers and those who attempted or intended to kill." (*Id.* at p. 800.) In between are defendants like the Tison brothers, who "helped plan and carry out the escape of two convicted murderers from prison," including their father, who "was serving a life sentence for killing a guard in the course of a previous escape." (*Id.* at p. 802.) The Tison brothers brought "a cache of weapons to prison, arm[ed] both murderers, and [held] at gunpoint guards and visitors alike." (*Ibid.*) During their subsequent escape, they carjacked and kidnapped a family of four, took the family's possessions, and the convicted murderers "then killed all four family members." (*Id.* at p. 799.) Although the Tison brothers did not kill or intend to kill, their " 'major participation in the felony committed, combined with reckless indifference to human life, [was] sufficient to satisfy the *Enmund* culpability requirement.' " (*Id.* at p. 800.)

To determine whether a defendant was a major participant, the *Banks* court has identified the following considerations: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks, supra*, 61 Cal.4th at p. 803, fn. omitted.)

Elaborating on the reckless indifference requirement, the California Supreme Court has explained that " '[r]eckless indifference to human life is "implicit in knowingly engaging in criminal activities known to carry a grave risk of death." ' [Citations.]" (*People v. Emanuel* (2025) 17 Cal.5th 867, 883 (*Emanuel*).) It "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*People v.* Clark (2016) 63 Cal.4th 522, 617 (Clark).) Recklessness has both a subjective and an objective component. (*Ibid.*) Subjectively, the defendant must consciously disregard risks known to him. (*Ibid.*) Objectively, recklessness is determined by "what 'a law-abiding person would observe in the actor's situation,' " that is, whether defendant's conduct " 'involved a gross deviation from the standard of conduct that a law-abiding person in the actor's situation would observe.' " (*Ibid.*) "[P]articipation in a ' "garden-variety armed robbery," ' i.e., one in which the only factor supporting a reckless indifference finding is that a participant was armed with a gun, is insufficient without more to establish reckless indifference." (*Emanuel, supra*, 17 Cal.5th at p. 884; see also *In re Scoggins* (2020) 9 Cal.5th 667, 677 [" 'the fact a participant [or planner of] an armed robbery could anticipate lethal force might be used' is not sufficient to establish reckless indifference to human life"].)

Acknowledging overlap between the major participant and reckless indifference elements (*Clark, supra*, 63 Cal.4th at pp. 614-615), our high court considered a number of factors in determining whether the evidence is sufficient to establish reckless indifference: (1) knowledge of weapons, and use and number of weapons; (2) physical presence at the crime and opportunities to restrain the crime and/or aid the victim; (3) duration of the crime; (4) the defendant's knowledge of a cohort's likelihood of killing; and (5) the defendant's efforts to minimize the risks of the violence during the felony. (*Id.* at pp. 618-623.)

9

No one of the *Banks* or *Clark* factors "is necessary, nor is any one of them necessarily sufficient" to establish a defendant was a major participant or acted recklessly indifferent to a grave risk of death during an offense. (*Banks*, *supra*, 61 Cal.4th at p. 803; *Clark*, *supra*, 63 Cal.4th at p. 618.)

With the foregoing factors in mind, we conclude the evidence in this case is sufficient to support the trial court's holding that defendant was a major participant who acted with reckless indifference to human life.

Regarding defendant being a major participant, the evidence demonstrates that defendant participated in the planning of the robbery. Defendant and Peterson communicated by phone nearly 100 times leading up to the robbery. The trial court could also have reasonably inferred defendant was involved in the planning from security footage, which showed both men entering the pharmacy at the same time, walking around the pharmacy counter on separate sides in a coordinated manner, and defendant taking money from the cash register while codefendant attempted to get oxycontin pills. Defendant did not touch any money until he put his gloves on, which evidences planning and forethought.

Substantial evidence also supports the conclusion that defendant was aware of the dangers of the crime and Peterson's use of a gun. It was reasonable for the trial court to infer defendant knew Peterson previously robbed the same pharmacy because of the volume of communications between the two prior to the robbery. The note given to the pharmacy clerk said, "We want all 800 Oxycontin. We will kill you," which defendant would have reasonably understood to mean that violence could occur during the robbery. After both men moved behind the counter, codefendant pulled his gun, pointed it at and threatened the pharmacy employees, which defendant could see and hear.

Defendant was present for the duration of the robbery and the shooting, and took money from the cash register. When Peterson escalated the situation defendant did

10

nothing to de-escalate what was happening. During the shooting, defendant ran out of the store without any attempt to aid those persons who had been injured or killed.

Turning to reckless indifference, defendant likely knew a gun was going to be used because he was involved in the planning, regardless he saw Peterson brandish the gun during the robbery. It is reasonable to infer defendant knew there was a likelihood of violence because the note given to the pharmacy clerk said, "We will kill you," and defendant and Peterson returned to the same location of Peterson's previous armed robbery only a month earlier.

Although the duration of the robbery was short, defendant was present the entire time and had the opportunity to restrain the crime after Peterson escalated the situation. Defendant could have told Peterson to put away the gun when Peterson pointed the gun and threatened to kill the employees. Rather than minimizing the risk of violence, however, defendant disregarded Peterson's actions and continued to focus on the robbery, removing money from the cash register and putting it into his pockets.

The evidence is certainly sufficient to support the trial court's ruling that defendant was a major participant who acted with reckless indifference to human life.

DISPOSITION

The trial court's order denying defendant's petition for resentencing is affirmed.

/s/
HULL, Acting P. J.

We concur:

/s/
ROBIE, J.

/s/
WISEMAN, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.